# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 1, 2009

## STATE OF TENNESSEE v. NADER DAQQAQ

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-447      Donald H. Allen, Judge**

_____

**No. W2009-01066-CCA-R3-CD  - Filed September 3, 2010**

_____

Following a jury trial, Defendant, Nader Daqqaq, was found guilty of driving under the influence ("DUI").  The trial court sentenced Defendant as a Range I, standard offender, to eleven months, twenty-nine days.  The trial court ordered Defendant to serve nine months in confinement before being eligible for work release or trusty status.  On appeal, Defendant argues that the evidence was insufficient to support his conviction.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Nader Daqqaq.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; James G. Woodall, District Attorney General; and Anna Banks Cash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

Dennis Ballentine, a police officer with the Jackson Police Department, testified that he was traveling southbound on the Highway 45 bypass in Jackson on November 24, 2007, at approximately 3:00 a.m., when he noticed a vehicle exit the interstate "at a fairly high rate of speed."  The vehicle merged on to the Highway 45 bypass, crossed six lanes of traffic, and

then turned left, still traveling at a high rate of speed. The vehicle drove over the dotted lines separating the two lanes of traffic before turning into a parking lot. Officer Ballentine activated his emergency lights, and the vehicle pulled over. Officer Ballentine identified Defendant as the driver of the vehicle, and stated that a woman was sitting in the front passenger seat. Defendant started to get out, and Officer Ballentine told him to remain in the vehicle.

Officer Ballentine described Defendant's behavior as "somewhat erratic" and said that his eyes were bloodshot. Based on these factors, Officer Ballentine decided to investigate further and asked Defendant to step out of his vehicle. Defendant initially denied that he had consumed any alcohol that night, and then he admitted that he had "a few" drinks earlier that evening. Officer Ballentine explained and demonstrated the "nine-step walk and turn" field sobriety test to Defendant. Officer Ballentine stated that Defendant "was very unstable on his feet" and kept asking why he had to perform the test. Defendant missed some of the steps in the test and staggered as he walked. Officer Ballentine said that Defendant also twice failed to satisfactorily perform the "one-legged stand" test. A video tape of the traffic stop which was filmed from the patrol car was introduced as an exhibit and played for the jury. Officer Ballentine explained that the camera was not centered properly and did not film the entire traffic stop.

After Defendant failed to successfully complete the field sobriety tests, Officer Ballentine placed Defendant under arrest for DUI. Defendant signed the implied consent form, and Officer Ballentine drove him to the Jackson Madison County General Hospital where a sample of Defendant's blood was drawn. The sample was forwarded to the Tennessee Bureau of Investigation (T.B.I.) for testing.

Officer Ballentine said that he noticed a passenger in Defendant's vehicle when the two vehicles stopped at a red light prior to the traffic stop. Officer Ballentine believed at the time that the passenger was a woman because of the length of her hair. Officer Ballentine did not ask the woman for her name at the traffic stop, and, although she too appeared intoxicated, the woman was allowed to leave the scene. Officer Ballentine said that woman did not offer any information and did not say that she was driving the vehicle instead of Defendant.

Special Agent Bethany McBride, a forensic scientist with the T.B.I., analyzed Defendant's blood sample. Special Agent McBride testified that the "ethyl alcohol gram percent was 0.18."

The State rested its case-in-chief, and Defendant presented his defense. Defendant testified that before Officer Ballentine initiated the traffic stop he had visited two

establishments and had consumed one beer at each place. At the second bar he met one of his friends, a woman he knew only as "Shelly." Shelly suggested they leave the bar and told Defendant that she had some errands she needed to do. Shelly got in the driver's seat of Defendant's two-door Chevrolet Monte Carlo. Defendant got into the back seat and went to sleep because he had to be at work in a few hours. Defendant said that Officer Ballentine's emergency lights woke him up. He saw Shelly moving over into the passenger seat, and he asked her what had happened. Shelly responded, "I got stopped. I can't afford this." Defendant said that he pushed the driver's seat forward and attempted to get out of the vehicle, but Officer Ballentine stopped him. Defendant said that another police officer told him to put his hands on the steering wheel. Defendant said, "I can't reach the steering wheel," and the officer told him to put his hands on the headrest. Shelly told this officer that she had not been drinking that night and that she was not driving the vehicle before it was stopped. The officer let Shelly leave the scene.

Defendant stated that he asked Officer Ballentine why he had to take the field sobriety tests when he had not been driving the vehicle. Defendant said that he agreed to take the tests because Officer Ballentine told him he would be permitted to leave if he successfully completed the tests. Defendant stated that he did not perform well on the tests because he had flat feet.

On cross-examination, Defendant agreed that he was under the influence of alcohol that night. He insisted, however, that he was not driving the Monte Carlo. In rebuttal, Officer Ballentine testified that Defendant was sitting in the driver's seat when he initiated the traffic stop, and a woman was sitting in the passenger seat. Officer Ballentine stated that Defendant never said that he was not driving the vehicle.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support the jury's finding that he was driving the vehicle when it was pulled over. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676

S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Tennessee Code Annotated section 55-10-401(a) provides, in pertinent part:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant . . .

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.

Viewing the evidence in a light most favorable to the State, Officer Ballentine testified that Defendant was sitting in the driver's seat of the Monte Carlo and a woman was sitting in the front passenger seat when he initiated the traffic stop. The woman did not tell Officer Ballentine that she was driving the vehicle, and Defendant did not deny that he was the driver. The jury heard Defendant's version of the events that night and, by its verdict, obviously found Defendant's testimony not credible as was its prerogative.

Based on the foregoing and viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was driving under the influence of an intoxicant on November 24, 2007, in violation of Tennessee Code Annotated section 55-10-401. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-4-